IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior District Judge Richard P. Matsch

Civil Action No. 04-cv-00347-RPM

PETER R. BORNSTEIN and the
LAW OFFICES OF PETER R. BORNSTEIN,

    Plaintiff,

v.

WESTPORT INSURANCE CORPORATION,

    Defendant.

FILED
UNITED STATES DISTRICT COURT
DENVER, COLORADO

JUN 21 2005

GREGORY C. LANGHAM
CLERK

---

ORDER ON MOTIONS FOR SUMMARY JUDGMENT

---

On July 28, 2003, Dr. Jeanne Bonar filed a complaint initiating Civil Action No. 03-cv-5789 in the District Court, City and County of Denver, Colorado, seeking damages from Peter R. Bornstein and his law office for legal malpractice in his representation of her in a claim for personal injuries against Aspen Valley Hospital in Pitkin County, Colorado. A copy of the complaint was sent to Westport Insurance Corporation ("Westport"), the insurer of the Law Offices of Peter R. Bornstein on Lawyers Professional Liability Policy No. COL-160681-5 for a policy period from June 1, 2002, to June 1, 2003, ("2002 policy") and a renewal Policy No. COL-161714-7 for the policy period from June 1, 2003, to June 1, 2004. On September 18, 2003, Westport denied coverage under either policy. Mr. Bornstein for himself and his law office ("Bornstein") brought this action for declaratory judgment declaring

that Westport must defend and indemnify him against the Bonar claim and for damages for breach of contract and bad faith breach of contract in the District Court, City and County of Denver, Colorado. Westport removed the action to this court, invoking diversity of citizenship jurisdiction granted by 28 U.S.C. § 1332. Westport moved for summary judgment of dismissal and the plaintiffs moved for summary judgment on the issue of coverage. The factual summary in this order is based on the stipulations in the Scheduling Order entered on July 23, 2004, and the filed papers.

These insurance contracts are "claims made" policies. There are five provisions relevant to this dispute.

Paragraph 1.A of the Coverage Unit provides, in relevant part:

> The Company shall pay on behalf of any INSURED all LOSS in excess of the deductible which any INSURED becomes legally obligated to pay as a result of CLAIMS first made against any INSURED during the POLICY PERIOD and reported to the Company in writing during the POLICY PERIOD or within sixty (60) days thereafter, by reason of any WRONGFUL ACT occurring on or after the RETROACTIVE DATE, if any.

The Reporting and Notice requirement in the Coverage Unit reads as follows:

> As a condition precedent to coverage under this COVERAGE UNIT, if a CLAIM is made against any INSURED, or if any INSURED becomes aware of any CLAIM, the INSURED(S) shall, as soon as practicable, but no later than sixty (60) days after termination of the POLICY PERIOD, provide written notice to the Company.
>
> If, during the POLICY PERIOD, any INSURED first becomes aware of a POTENTIAL CLAIM and gives written notice of such POTENTIAL CLAIM to the Company during the POLICY PERIOD, any CLAIMS subsequently made against any INSURED arising from the POTENTIAL CLAIM shall be considered to have been made during the POLICY PERIOD.

The Disclosure Form described claims-made coverage as follows:

> In your "claims-made" policy, coverage is provided for liability if the claim for damages is first made and reported during the policy period. The claim must be a demand for damages by an injured party but does not have to be in writing. Under most circumstances, a claim is considered made when it is received

and recorded by you or us; but sometimes, a claim may be
deemed made at an earlier time. This can happen when another
claim for the same act has already been made, or when the claim
is received and recorded during an Extended Reporting Period.

The General Terms & Conditions section provides for an Extended Reporting Period Option and provides for coverage in the following language:

If the Company or the NAMED INSURED shall cancel or non-
renew the POLICY, the NAMED INSURED shall have the right to
extend the time for reporting CLAIMS made against any
INSURED under the POLICY per the following schedule. The
additional premium for the Extending Reporting Period shall be:

| Extended Reporting Period | Additional Premium |
|---|---|
| 12 months | 100% of the last annual premium of this POLICY |
| 24 months | 150% of the last annual premium of this POLICY |
| 36 months | 185% of the last annual premium of this POLICY |
| Unlimited | 300% of the last annual premium of this POLICY |

If the NAMED INSURED exercises the Extended Reporting Period option,
the coverage shall apply only to CLAIMS for WRONGFUL ACTS, as
defined in each of the attached COVERAGE UNITS, which occurred prior
to the end of the POLICY PERIOD and on or after the RETROACTIVE
DATE, if any, which are otherwise covered by the POLICY and which are
first made against any INSURED and reported to the Company during the
Extended Reporting Period.

An additional provision in the Disclosure Form is as follows:

EXTENDED REPORTING PERIODS OF "TAILS"

WARNING

If a claim is made after the termination of your "claims-made" policy, you
may not have coverage for that claim unless you purchase an Extended
Reporting Period or "tail" endorsement, which must be offered to you with
at least the aggregate limit of your terminated policy, for at least one
year, at a premium not to exceed 200% of your terminated policy
premium.

Carefully review the policy provisions regarding the available Extended
Reporting Period, especially the length of coverage and price, and the
time during which you must purchase or accept any offered Extended
Reporting Period.

"Claim" is defined in the General Terms & Conditions as follows:

**"CLAIM" MEANS** a demand made upon any INSURED for LOSS,

> as defined in each of the attached COVERAGE UNITS, including, but not limited to, service of suit or institution of arbitration proceedings or administrative proceedings against any INSURED.

The policies were marketed to Mr. Bornstein and other Colorado lawyers through the Colorado Bar Association and insurance agency Seabury & Smith, Inc., by a flyer including the following language:

> *Exclusively Administered by Seabury & Smith, Inc.*
>
> **Westport has one of the broadest policies, offering the following benefits:**
>
> ● Claims made coverage with a free 60-day *mini tail* for reporting claims.

Dr. Jeanne Bonar was a patient at Aspen Valley Hospital in Pitkin County, Colorado, for treatment from a ski injury. On January 30, 2001, she fell in the hospital, sustaining additional injuries which she claimed to be the result of negligence of the nursing staff. She retained Peter Bornstein to represent her in pursuing a claim for damages against the hospital in March, 2001. On November 4, 2002, Mr. Bornstein wrote a demand letter to Aspen Valley Hospital. A reply from the hospital's attorney Nick Kaluk, dated November 27, 2002, informed that the hospital is a public entity within the meaning of the the Colorado Governmental Immunity Act, C.R.S. § 24-10-103(5) (CGIA) and that Dr. Bonar's claim was barred by C.R.S. § 24-10-109(1) because the required notice was not received within 180 days after discovery of the injury.

On December 17, 2002, Mr. Bornstein wrote to Mr. Kaluk requesting information to support the claim of governmental immunity. A copy of that letter was sent to Dr. Bonar. Mr. Bornstein sent a follow-up letter to Mr. Kaluk under date of January 14, 2003, advising that a lawsuit would be filed by January 20, 2003, if the requested information had not then been provided. Dr. Bonar sent a letter to Mr. Bornstein, under date of January 24, 2003, requesting that the lawsuit be filed because of the statute of limitations. Under date of January 27, 2003, Mr. Kaluk sent the requested documents to Mr. Bornstein by facsimile transmission. Mr.

Bornstein responded by a facsimile request for additional documents, saying that a lawsuit would be filed prior to January 30, 2003, to avoid the bar of the statute of limitations. Mr. Bornstein further wrote that if the requested information showed the claimed immunity the complaint would be dismissed voluntarily. A tolling agreement was signed on January 30, 2003, providing up to February 28, 2003, for the opportunity to assess the hospital's position. Mr. Kaluk sent additional information under date of February 19, 2003. Mr. Bornstein filed the Bonar complaint against the hospital in the Pitkin County District Court in Aspen, Colorado, but did not serve it.

On May 9, 2003, Mr. Bornstein wrote a letter to Dr. Bonar and her attorney in Alaska, Gary Eshbacher, referring to a telephone conversation on Monday, April 28, 2003, explaining that the complaint had not been served because Mr. Bornstein believed that it was subject to a motion to dismiss for lack of jurisdiction under CGIA. In that letter, Mr. Bornstein requested Dr. Bonar's authority to dismiss the complaint voluntarily knowing that it could not be re-filed because of the statute of limitations.

On July 16, 2003, attorney Jim Cederberg on behalf of Dr. Bonar telephoned Mr. Bornstein requesting the identity of his malpractice carrier and on July 17, 2003, Mr. Bornstein wrote to Westport notifying of the potential claim of Dr. Bonar. The legal malpractice action was filed by Mr. Cederberg on July 28, 2003, in Denver District Court. The complaint filed by Mr. Bornstein on behalf of Dr. Bonar in Aspen was dismissed on October 17, 2003, for failure to prosecute.

On these facts, Westport moved for summary judgment of dismissal contending that under the plain language of the policy the Bonar claim was not made within the policy period that expired on June 1, 2003. Conversely, the plaintiffs moved for summary judgment on the same facts, asserting that the Disclosure Statement and the marketing brochure created an ambiguity as to coverage which, under Colorado law, must be resolved against the insurance

company as a matter of law. More specifically, the plaintiffs argue that the 60 days after June 1, 2003, was an extended period during which the claim may be made and reported because it was described as an extended reporting period or a "tail." That argument fails because there is no ambiguity. The extended reporting period is clearly defined as an endorsement option available to the insured in the event of cancellation or non-renewal of the policy. There is no extended reporting period in this case. The brochure advertising the policy refers to a 60-day mini tail <u>for reporting claims</u> and says nothing about the making of a claim, as defined in the policy, during the 60 days after the end of the policy period. Accordingly, the plaintiffs' motion for summary judgment is denied.

There is a factual dispute as to when the Bonar claim was first made to Mr. Bornstein. He has submitted an affidavit describing the telephone conversation with Dr. Bonar and Gary Eschbacher on April 28, 2003, referred to in the May 9, 2003, letter. Mr. Bornstein says that he explained the obstacle of the CGIA to his client and her Alaskan attorney and requested permission to dismiss the lawsuit. The permission was not granted. Mr. Bornstein then wrote in his affidavit, "Either in this conversation or one occurring sometime in May, 2003, Eschbacher requested that I provide my insurance coverage information. I was also asked if I would recommend a Denver attorney to represent Dr. Bonar's interests against me." The defendant disputes the credibility of that statement and also asserts that, assuming the truth of it, the request by Mr. Eschbacher does not constitute a claim as defined in the policy because it did not include a demand for loss.

There are triable issues of fact with respect to Mr. Bornstein's affidavit and whether the conversation would reasonably be construed to constitute a claim for loss resulting from what was then apparent to Mr. Eschbacher that Dr. Bonar's claim against the hospital was barred under Colorado law. Therefore, the defendant's motion for summary judgment must be denied and this case proceed to trial on the question of whether Dr. Bonar's claim was made to Mr.

Bornstein during the policy period of the 2002 policy.

Plaintiffs also claim coverage under the renewal policy and the defendant denies it on the ground that when Mr. Bornstein submitted his application for renewal he failed to disclose the Bonar matter as a potential claim and Exclusion B in the 2003 policy excluded coverage for "Any Act, Error, Omission, Circumstance or Personal Injury occurring prior to the effective date of this POLICY, if any INSURED at the effective date know [sic] or reasonably could have foreseen that such act, error, omission, circumstance or personal injury might be the basis of a claim." The application for the renewal policy was signed by Mr. Bornstein on April 8, 2003. In his affidavit, Mr. Bornstein said that he did not believe that the Bonar matter would ripen into a potential claim and he did not believe that it was reasonable for any lawyer adhering to the standard of care in Colorado to have known that Aspen Valley Hospital was a governmental entity under CGIA. Whether a Colorado attorney should have discovered the applicability of CGIA to Aspen Valley Hospital between the time Mr. Bornstein was retained in March, 2001, and the expiration of the 180-day notice period is a disputed issue of fact. That is the same issue that is presented in the legal malpractice action. To apply the Exclusion B from coverage provision in the renewal policy to the Bonar claim, there must be a factual determination that a Colorado lawyer would reasonably believe that he was subject to a malpractice suit for the failure to make that discovery within the time available since he was retained and before the expiration of the notice period. That is an issue for trial.

Accordingly, it is

ORDERED that the respective motions for summary judgment are denied.

Dated: June 21st, 2005

BY THE COURT:

_____
Richard P. Matsch, Senior District Judge